FILED IN CHAMBERS
U.S.D.C. Atlanta

FEB 0 6 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CROWN FIBER COMMUNICATIONS,
INC.,

        Plaintiff,

    v.

CHARTER COMMUNICATIONS
HOLDING COMPANY, LLC, et al.,

        Defendants,

CIVIL ACTION

NO. 1:04-CV-3550-RLV

O R D E R

This matter comes before this court on the Counterclaim
Defendant Billy Ray Jones's motion for a protective order [Doc. No.
140], and Counterclaim Plaintiffs's "Memorandum in Opposition to
Billy Ray Jones' Motion to Compel Production of Privileged
Material" [Doc. No. 157]. Also, the Counterclaim Plaintiffs have
filed a motion for leave to file a "Surreply in Opposition To Billy
Ray Jones' Motion To Compel Production of Privileged Material"
[Doc. No. 184].

On January 20, 2005, Charter Communications Holding, LLC and
Charter Communications Inc. (hereafter collectively known as the
"Charter Communications") filed a counterclaim against Crown Fiber
and Billy Ray Jones, alleging that Crown Fiber and Billy Ray Jones
had bribed three Charter employees in order to secure construction
contracts work for Crown from Charter.[1] In an effort to obtain

_____

[1] In addition to allegations of bribery, the Charter
Communications allege that the Counterclaim Defendants violated the

discovery to defend against Charter Communications's allegations, Jones requested that the Charter Communications produce certain documents and/or materials via several discovery requests. In response, Charter Communications objected to the production of certain documents contained in Jones's Fourth Request for Production of Documents to Charter Communications Holdings, LLC and Charter Communications, Inc. [Doc. No. 141, Ex. A] and paragraphs 10 and 11 of Jones's Second Request For Production To Charter Communications Holdings, LLC and Charter Communications, Inc. [Doc. No. 141, Ex. B.][2] on the grounds that these discovery requests

federal and Georgia state RICO statues as well as conspired to violate both statutes. Additionally, they assert claims based on state-law fraud, unjust enrichment, and aiding and abetting a breach of a fiduciary duty.

[2] In "Billy Ray Jones' Second Request for Production of Documents To Charter Communications Holdings, LLC and Charter Communications, Inc.," Jones requested:

10. All documents that are evidence of or contain any reference to or record of communications between any employee, agent, lawyer or other representative acting on behalf of Charter and any employee, agent or other representative of the United States Government, including without limitation representatives of United States Attorneys Office, the FBI and/or the United States Postal Inspectors regarding any of the following:

a. The alleged Crown Fiber Scheme.
b. The alleged Marjo Swindle.
c. Billy Jones.
d. David McCall.
e. Ron Johnson.
f. Dwayne Ford.
g. Marjo Investments, LLC.

11. All documents that constitute, in whole or in part, any witness statements, investigative reports or other documents that Charter or its counsel have provided to

called for the production of material protected from disclosure by the attorney-client privilege and/or the attorney work-product doctrine.

Thereafter, a discovery dispute ensued.   Jones argues that Charter Communications affirmatively and knowingly waived its attorney-client and work-product privilege related to issues and matters that are the subject of this suit's Counterclaim by cooperating with the U.S. Attorney's Office in St. Louis, Missouri, in a criminal investigation that eventually led to the indictment, guilty plea, and conviction of several former Charter officers.[3] For support for the proposition that the Charter Communications waived its attorney-client privilege and related attorney work-product privilege, Jones makes three arguments: (1) Gordon Ankney, an attorney with the firm of Thompson Coburn LLP, who was retained by Charter, is lying or misleading this court with regard to the extent of Charter Communications's  waiver of its attorney-client

---

any employee, agent or other representative of the United States Government, including without limitation, the United States Attorneys Office, the FBI and/or any Postal Inspectors regarding any of the following:

a. The alleged Crown Fiber Scheme.
b. The alleged Marjo Swindle.
c. Billy Jones.
d. David McCall.
e. Ron Johnson.
f. Dwayne Ford.
g. Marjo Investments, LLC.

[3]The government's investigation resulted in the conviction of a number of individuals including David McCall, a former Charter Vice President, who allegedly had questionable business dealings with Jones.

privilege;[4] (2) Carl Vogel, a former Charter C.E.O., stated in a deposition[5] that he believed some privileged information was produced to the government in the course of its investigation, and

------

[4] According to the Declaration of Gordon L. Ankney,

> To my knowledge, Charter has never agreed to produce--and in fact has not produced--any privileged material that is the product of its internal investigation of the Crown Fiber Scheme or the related NASCAR Scheme to the United States Attorney's Office for the Eastern District of Missouri, or any other governmental agency.

While the court gives Ankney's declaration little weight, the court finds that Jones's attack on Ankney's declaration to be without merit.

[5] According to Jones, Vogel's testimony demonstrates that Charter Communications affirmatively waived its attorney-client privilege by disclosing information to the government relating to the subject of the current Counterclaim including the Charter Communications's internal investigation into the relationship between Jones, Crown Fiber, and McCall. However, a review of Vogel's actual testimony does not support this contention. Specifically, Vogel's actual testimony is as follows:

> Q: To your knowledge, did Charter waive its attorney/client privilege with respect to those communications with inside and outside counsel as part of its cooperation with the government?
> Mr. Bennet [counsel for Vogel]: I object to the form of the question. I think it's a little imprecise about what discussions you're talking about, but subject to my objection, Mr. Vogel can answer.
> A: Yes, to my knowledge, we waived our attorney/client privilege with the U.S. attorney's office.
> Q: Okay. That's all I have. Thank you, Mr. Vogel.

Charter Communications argues, "Even if Mr. Vogel, who is not an attorney, stated that he thought that Charter had waived privilege with respect to the matters relevant to *this* case, his beliefs about what had occurred, if shown by other evidence (e.*g.* Mr. Ankney's declaration and the January 7, 2003, letter) to be incorrect, cannot create a waiver where none exists." This court agrees.

therefore all privilege as to all subjects must have been waived; and (3) the government started asking questions about McCall's relationship to Jones and about Crown Fiber's billing practices at about the same time that it was already investigating McCall and questioning Jones about other matters, and that the government could have known to ask such questions only because Charter Communications revealed privileged information about its internal investigation to the government.[6]

In response, Charter Communications argues that during the government's investigation it agreed to produce privileged material only on a limited set of issues, none of which relates to this case

---

[6] Jones implies that certain documents produced to the government by Charter Communications referred either to him or his dealings and business relationship with Charter and McCall. To support this conclusion, Jones submitted a number of declarations of individuals. A review of these declarations supports the inference that the U.S. Attorney's Office in St. Louis, Missouri, became interested in Jones and his business relationship with McCall and Charter around the same time or sometime after the production of privileged materials to the government. However, none of these declarations directly proves that it was Charter Communications's production of documents to the government that alerted the U.S. Attorney's office to Jones.

In Charter Communications's "Motion For Leave To File Surreply In Opposition To Billy Ray Jones' Motion to Compel Production of Privileged Material," Charter Communications requested that this court strike Jones's reply brief and the above declarations on the grounds that (1) the reply brief improperly contained new material and inappropriate argument, and (2) Jones's reply brief exceeded the page limits imposed by the local rules for reply briefs [Doc. No. 184]. However, the court opted not to strike Jones's reply and this court considered both the arguments contained in Jones's reply and the declarations submitted by Jones in rendering its decision on the pending motion to compel.

or Counterclaim.[7] Alternatively, the Charter Communications argues that the Eighth Circuit's case law regarding the waiver of attorney-client privilege and related work-product doctrine governs the current discovery dispute.[8] According to Charter Communications, "Even had Charter disclosed privileged material to the government that limited disclosure would not constitute a waiver of Charter's privilege with respect to this litigation."

---

[7] Specifically, Charter Communications argues that it agreed to produce material protected by the attorney-client privilege and work-product privilege related to only four very limited issues.

(1) "Subscriber Count, including managed disconnect issues";
(2) "Programming contracts and associated launch fees";
(3) "Set-top box equipment purchases from Scientific Atlanta and Motorola and related advertising agreements"; and
(4) "[Charter's] discussions with the SEC in May 2002."

Charter Communications argues that none of Jones's requests falls within the purview of the material previously disclosed to the government.

[8] With regard to why Eighth Circuit law governs the current dispute, Charter Communications argues:

Charter resides in the Eighth Circuit, in St. Louis, Missouri. The investigation upon which Jones bases his waiver claim was conducted by the United States Attorney's Office for the Eastern District of Missouri, also in the Eighth Circuit. Thus, Charter reasonably relied on Eighth Circuit law protecting its privilege in conjunction with its limited disclosure to the government. Accordingly, Eighth Circuit law should apply. The fortuity that Crown Fiber chose to sue Charter in Georgia instead of Missouri should have no bearing on Charter's right to the privilege protection afforded by the law of the jurisdiction in which Charter resides. Accord Fed. R. Evid. 501.

For support for this proposition, Charter Communications cites to In re Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 611 (8th Cir. 1978)(holding that where a client voluntarily discloses privileged information to the government during a government investigation that its waiver of its attorney-client privilege and related work-product privilege was limited to the government and that the waiver of its attorney-client privilege and related work-product privilege does not apply to all other adversaries.)

In response to Charter Communications's second argument, Jones contends that the Eighth Circuit's law of privilege is not applicable to the facts of this case.  Instead, Jones counters, "[f]ederal common law of privilege, as interpreted by this Court in the light of reason and experience, and the Eleventh Circuit Court of Appeals, should apply to Plaintiff's RICO claim, pursuant to Federal Rules of Evidence, Rule 501."[9]  Furthermore, Jones argues that the doctrine of limited waiver of the attorney-client privilege and related work-product privilege as articulated by In re Diversified Indus., Inc has been either expressly rejected or called into question by several circuit courts.  Relying heavily upon In re Columbia/HCA Healthcare Corp. Billing Practices, 293

---

[9] A review of the parties' submission reveals that Jones's reply avoids an extended discussion of which law applies.  In fact, Jones addresses only the choice of law question, which the court finds central to his motion, in a footnote.  Coincidently in footnote 9 of his reply, Jones asserts that Eleventh Circuit law should apply because Charter Communications chose this forum to litigate against him by removing this case to this court and filing a RICO action against him.  In response, Charter Communications argues, "Charter did not cho[o]se this forum to litigate against Mr. Jones.  Jones' former company chose the forum to sue Charter, and Charter simply responded."

F.3d 289, 296 (6th Cir. 2002), Jones posits, "Several considerations urge against any application of the selective waiver doctrine in this case, including one of basic fairness that a 'client cannot be permitted to pick and choose among his opponents, waiving the privilege as to some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefits.'"

Neither party has proffered, and this court has been unable to find, any Eleventh Circuit law directly on point.   Without controlling case law, the court has carefully considered the parties' arguments and submissions and concludes that the Eighth Circuit's law of privileges with its rule of limited waiver of the attorney-client privilege and related work-product exception governs the current discovery dispute with regard to the discovery of privileged material.   In reaching this conclusion, the court places significant weight on the fact that when Charter Communications produced documents to the U.S. Attorney's Office in St. Louis, Missouri, it reasonably relied upon Eighth Circuit law, with its limited waiver exception for materials produced to the government.

In fact, Charter Communications's actions in dealing with the government, reflected by its correspondence with the government, shows that it believed that the Eighth Circuit's limited waiver exception was the applicable law governing its actions.[10]   Charter

---

[10] Charter Communications agreed to produce privileged material to the United States Attorney's Office for the Eastern District of

Communications argues, "[t]he Court need not even reach the issue of whether the privileged materials at issue were actually produced, because any production was subject to a binding agreement that such cooperation did not constitute a general privilege waiver, an agreement that is valid under governing Eighth Circuit law." This court agrees. Therefore, even assuming that Charter Communications disclosed privileged material to the government which involved the subject of the current Counterclaim, such disclosure to the government would not constitute a total waiver of its attorney-client privilege and related work-product privilege with respect to this litigation. For the foregoing reasons, the court denies Jones's motion to compel the documents requested by paragraphs 10 and 11 of his Second Request For Production To Charter Communications Holding, LLC and Charter Communications, Inc.

With regard to the discovery requested in Jones's "Fourth Request for Production of Documents to Charter Communications Holdings, LLC and Charter Communications, Inc.," the court can find

---

Missouri on January 7, 2003. In a letter drafted by Stephen B. Higgins, an attorney for Charter, to James G. Martin, an Assistant United States Attorney in St. Louis, Missouri, Higgins wrote, "[I]t is expressly agreed that the sharing of such Attorney Information with the Government is not intended to be and is not a waiver of the Privileges which otherwise apply to such Attorney Information or to any matter not within the scope of the Government's investigation." [Doc. No. 157, Ex. A]. In addition, the production of privileged materials was accompanied by a letter emphasizing "this production is not intended to constitute a waiver of the Privileges to which Charter is entitled in any civil or administrative matter or any other governmental investigation of any kind." Id.

no reason why the parties cannot resolve the discovery dispute over the production of non-privileged documents contained in that request in an amicable manner and without further court intervention. In its response to this document request, Charter Communications stated, "To the extent they exist, non-privileged responsive documents will be made available at the offices of Thompson Coburn LLP, One U.S. Bank Plaza, St. Louis, Missouri, 63101." According to Jones, pursuant to an agreement between the parties, copies of that material should have been provided to Kilpatrick Stockton, LLP, at Jones's expense. However according to Jones, no responsive non-privileged material has been provided or produced by Charter Communications in response to his "Fourth Request for Production of Documents to Charter Communications Holdings, LLC and Charter Communications, Inc."

Charter Communications's non-production of non-privileged documents is troubling. The parties' mutually-agreed upon arrangement to produce non-privileged documents to Kilpatrick Stockton, LLP., at Jones's expense provides a fair and equitable resolution. Furthermore, such an agreement between the parties avoids the court's further intervention into a matter best resolved by the parties themselves.[11]

For the above reasons, Jones's motion to compel the production of certain documents [Doc. No. 140] is DENIED in part and GRANTED in part. With regard to the documents requested by paragraphs 10

---

[11] Having not been provided with copies of any of the documents that are allegedly privileged, the court notes that it cannot make a determination on its own which documents are in fact privileged and which are not privileged.

and 11 of "Billy Ray Jones' Second Request for Production of Documents To Charter Communications Holdings, LLC and Charter Communications, Inc.," the court DENIES Jones's motion to compel the production of said documents.  With regard to the documents requested by "Billy Ray Jones' Fourth Request for Production of Documents to Charter Communications Holdings, LLC and Charter Communications, Inc.," Jones's motion to compel is DENIED in part and GRANTED in part.  The court orders Charter Communications to produce any and all non-privileged documents and/or materials referred to and requested by "Billy Ray Jones' Fourth Request for Production of Documents to Charter Communications Holdings, LLC and Charter Communications, Inc." to the Counterclaim Defendant Billy Ray Jones within 20 days of the date of the docketing of this order.  Lastly, the court GRANTS the defendants' motions to file a "Surreply in Opposition to Billy Ray Jones' Motion to Compel Production of Privileged Material" [Doc. No. 184].

SO ORDERED, this **6th** day of February, 2006.


ROBERT L. VINING, JR.
Senior United States District Judge